Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | John W. Darrah |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4453 | **DATE** | 1/7/2003 |
| **CASE TITLE** | JOHN M. PLANK vs. VISION LIMITED PARTNERSHIP, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Amended Motion to Vacate Arbitrators' Award (Doc. #3)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Movant's motion to vacate arbitrators' award (Doc. #3) is DENIED and the case terminated. All pending dates and motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN 09 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 6 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JHC | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN M. PLANK | ) | |
| | ) | |
| Movant, | ) | |
| | ) | No. 02 C 4453 |
| v. | ) | |
| | ) | Judge William J. Hibbler |
| VISION LIMITED PARTNERSHIP, | ) | |
| CHESAPEAKE INVESTMENT | ) | |
| SERVICES, INC., YU-DEE CHANG, | ) | |
| AND RICHARD BARNEY | ) | |
| | ) | |
| Respondents. | ) | |

DOCKETED JAN - 9 2003

## MEMORANDUM OPINION AND ORDER

### I. Introduction

John M. Plank moves this Court to vacate an arbitrator's award. After the value of his accounts with the respondents plummeted in late 2000, Plank filed for arbitration against the respondents with both the National Futures Association (NFA) and the National Association of Securities Dealers (NASD), asserting that Chang and Barney misrepresented the risks involved in his investments, mismanaged his investment accounts, and traded his accounts without authority. The NFA arbitration panel ruled against Plank and did not award him any monetary damages. The NASD panel awarded him $81,000 in rescission damages. Plank now moves to vacate only the NFA award, arguing that the award was procured by fraud and that the arbitrators exceeded their authority. For the following reasons, Plank's motion to vacate the arbitrator's award is DENIED.

1



## II. Factual Background

Plank met with Chang and Barney in April 2000 to discuss the opening of a futures account. According to Plank, he expressed to Chang and Barney that he was concerned about the safety of his investment and made it clear that he wanted less risk in his investments because he would be returning to school for a planned career change. In light of those concerns, Plank claims that he relied on representations by Chang and Barney as to the safety of the funds before he opened the accounts, claiming that Chang and Barney informed him that they would employ a strategy of "straddling futures" that would allow to minimize the risk of loss yet also allow the investment to grow.

Based on these representations, Plank opened a futures account with Chesapeake Investment Services, Inc., which served as his broker and introduced Plank to Vision Limited Partnership. As the futures commission merchant, Vision served as the clearing broker for Plank's account with Chesapeake. Plank's initial investment was $500,000. By early September, the value of the account had risen to a peak of $860,000 (in part because Plank had deposited an additional $100,000). Shortly after reaching this peak, however, the value of Plank's account sharply declined, dropping to $386,000 in October 2000 and reaching a final balance of $112,000 in January 2001.

Plank filed his demand for arbitration in March, 2001. In that demand, Plank alleged that Chang and Barney had violated: 1) 7 U.S.C. § 6c(b) by making

false and deceptive statements and; 2) 7 U.S.C. § 6b by making unauthorized transactions on his behalf. Plank also alleged that Chesapeake and Vision had violated 7 U.S.C. § 4 for failing to supervise Chang and Barney and that Chesapeake, Vision and Change had violated 7 U.S.C. § 13c(a) by aiding and abetting the previously-listed violations. The NFA arbitration panel heard four days of testimony in early January 2002 and rebuttal and closing arguments on February 11, 2002. Two areas of contention before the arbitration panel were whether Plank had authorized each individual transaction conducted on his behalf and whether the individual respondents managed futures accounts or acted under a limited power of attorney. In support of his position that Chang and Barney had conducted unauthorized transactions and individually managed his accounts, Plank submitted extensive documents (such as phone logs, his passport records demonstrating dates in which he was out of the country, and promotional materials from Chesapeake). The NFA panel chose to believe the respondents rather than Plank for it awarded him no monetary damages, but did not set forth any reasoning for its award. Although the award was dated March 8, 2002, the NFA did not send it via facsimile to Plank until March 25, 2002. Plank now moves to vacate the award.

## II. Standard of Review

Under 9 U.S.C. § 10(a), a court may vacate an award of an arbitration panel only where: 1) the award was procured by corruption, fraud, or undue means; 2)

3

there was evident partiality or corruption in the arbitrators; 3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, or in refusing to hear evidence material to the controversy, or of any other misbehavior; or 4) the arbitrators exceeded their powers. The grounds for challenging an arbitration award are narrowly limited, and factual or legal errors—even clear or gross errors—are not grounds for vacating an award. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed. 740 (2001); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *IDS Life Ins. Co. v. Royal Alliance Assoc., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001); *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995). A restrictive standard of review is essential to protect the purpose of arbitration as a less expensive and more streamlined method of dispute resolution. *Eljer Mfg., Inc. v. Kowin Dev. Co.*, 14 F.3d 1250, 1254 (7th Cir. 1994).

### III. Analysis

Plank first argues that the NFA panel's award should be vacated because it was procured by fraud. According to Plank, the respondents committed perjury when they testified that they had made no trades in Plank's account without his authorization and that they did not manage his account. In support he submits largely the same evidentiary material that he presented to the arbitration panel, claiming that it contradicts the respondents' testimony and therefore proves that the testimony was perjurous and the award procured by fraud.

4

A vacatur of an arbitrator's award under § 10(a)(1) requires the movant to show that the basis for the fraud was: 1) not discoverable upon the exercise of due diligence prior to the arbitration; 2) materially related to an issue in the arbitration; and 3) established by clear and convincing evidence. *Gingiss Int'l, Inc.*, 58 F.3d at 333. The FAA thus does not allow vacatur in the event of any fraudulent activity, but instead requires a nexus between the alleged fraud and the basis for the arbitration award. *Williams v. Katten, Muchin, & Zavis*, 1996 WL 717447, *3 (N.D. Ill. Dec. 9, 1996) (citing *Dean Foods Co. v. United Steel Workers of America*, 911 F.Supp. 1116, 1124 (N.D. Ind. 1995)). In other words, the fraud must prevent the panel from considering a significant issue to which it does not otherwise enjoy access. *Id.* Here, the evidence relied upon by Plank to establish the respondents' fraud is not only evidence that was discoverable prior to the arbitration, but evidence that, for the most part, he *actually presented* to the panel.[1] The panel had the opportunity to consider Plank's argument that the respondents had committed perjury and rejected it. *Cf. Waddle v. LT Lawrence & Co., Inc.*, 1998 WL 901687, *4 (N.D. Ill. Dec. 17, 1998) (holding that petitioners'

---

[1] In support of his motion, Plank also submitted five additional documents purporting to show that Chang and Barney managed futures accounts, contrary to their testimony before the NFA panel. Although Plank admits that he had these documents at the time of the hearing, he points to nothing to suggest that he attempted to introduce them into evidence before the NFA panel and that the panel declined to consider them. Even had Plank submitted evidence that the panel refused to admit his exhibits, not every failure to hear relevant evidence constitutes misconduct requiring vacatur of an award. *Forum Ins. Co. v. First Horizon Ins. Co.*, 1989 WL 65041, *6 (N.D. Ill. Jun 8, 1989).

substitution of pages in exhibit books after they had been admitted into evidence did not rise to the level of fraud where arbitrator considered objection and rejected it). In short, Plank argues that the arbitrator's committed error in believing the respondents instead of believing him. But disagreements over an arbitrator's assessment of credibility do not establish that the award was procured by fraud. As noted above, error is not a valid grounds for disturbing an arbitrator's award. *Misco, Inc.*, 484 U.S. at 38; *IDS Life Ins. Co.*, 266 F.3d at 650; *Gingiss Int'l, Inc.*, 58 F.3d at 333.

Plank next argues that the arbitration panel exceeded its authority by rendering the decision more than 30 days after the record had closed, in violation of the rules of the NFA. The rules of the NFA require the panel to "render its award, in writing, dated and signed by the Panel members," within 30 days after the record closed. In this instance, the record closed on February 11, 2002. The award was *dated* March 8, 2002 (25 days after the record closed), but not transmitted to Plank until March 25, 2002 (42 days after the record closed). The date on the award is questionable, for the Respondents submitted an affidavit from the NFA's manager of arbitration and mediation who avers that she sent the award to the panel for signature on March 11, three days *after* it was allegedly signed.

But whether the panel's award was rendered on March 8, March 11, or March 25 is much ado about nothing. Unless the NFA's rules make the deadline

jurisdictional, "a party's failure to complain about delay before the award is made forfeits his right to challenge the timeliness of the award." *Hill v. Norfolk and Western Ry. Co.*, 814 F.2d 1192, 1199 (7th Cir. 1987); *see also National Wrecking Co. v. International Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993) ("Parties . . . cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court. We will not tolerate such sandbagging."); *Dean Foods Co.*, 911 F.Supp. at 1128. Perhaps the panel did violate the NFA's procedural rules by rendering its award more than 30 days after the record closed, but nothing in the NFA's rules suggests that the arbitration panel lost jurisdiction to render an award if it did not do so within the time allotted. Plank did nothing once the 30-day deadline had lapsed and no award had been rendered, and he cannot now complain that the NFA panel exceeded its authority in rendering the award after the deadline.

Lastly, Plank argues that the arbitration panel exceeded its authority by deciding issues not submitted to it. Plank's final argument is frivolous. Plank rests his argument upon the panel's description of the issues that were submitted to it, in which the panel notes that Plank alleged a "violation of the Commodities [sic] Exchange Act." Plank contends that "the only issue presented to the panel was whether or not Respondents had violated one of the four Commodity Exchange Act sections specifically identified in Plank's demand for arbitration." In short, Plank argues that the arbitrators decided that Respondent's violated no

section of the Commodity Exchange Act (CEA), when they were only asked to decide whether they violated §§ 4, 6b, 6c(b), 13c(a).

It is true that parties to arbitration may stipulate the issues they want determined. *See First Options of Chicago, Inc.*, 514 U.S. at 945, 115 S.Ct. 1920; *American Postal Workers Union, AFL-CIO, Milwaukee Local v. Runyon*, 185 F.3d 832, 934 (7th Cir. 1999). Plank, however, splits the finest of hairs when he quibbles with the wording of the panel. The panel merely used general wording, not specific, in describing the issues before it, and the panel's choice of words is insufficient to demonstrate that it exceeded its authority. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ("[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award"). Plank's claim that the NFA panel exceeded its authority by referring to the CEA generally bears little resemblance to successful claims that arbitrators exceeded their authority. *Cf Lindland v. United States of America Wrestling Assoc., Inc.*, 227 F.3d 1000, 1003 (arbitrator exceeded his authority in reviewing the propriety of another arbitrator's decision); *Geneva Sec., Inc. v. Johnson*, 138 F.3d 688, 692 (7th Cir. 1998) (holding that panel exceeded its powers in issuing an award that relied on investment not eligible for arbitration); *Eljer Mfg., Inc.*, 14 F.3d 1250 (7th Cir. 1994) (holding that arbitrator exceeded his power by arbitrating a dispute involving a third party not

a signatory to the arbitration agreement). Had the panel, perhaps, found that the Respondents had violated a provision of the CEA that had not been submitted to the panel, *the Respondents* (not Plank) might have a beef with the panel. Plank, on the other hand, has none.

### IV. Conclusion

For the foregoing reasons, Plank's motion to vacate the award of the NFA panel is DENIED.

IT IS SO ORDERED.

January 7, 2002
Date

The Honorable John W. Darrah
United States District Court